**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MINER ELECTRIC, INC.;
RUSSELL E. MINER,

        Plaintiffs-Appellees,

v.

MUSCOGEE (CREEK) NATION,

        Defendant-Appellant.

No. 06-5216

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 05-CV-359-HDC-PJC)**

---

Submitted on the briefs:[*]

Shannon B. Cozzoni, Muscogee (Creek) Nation, Okmulgee, Oklahoma, for
Defendant-Appellant.

Tony M. Graham, William F. Smith, Graham and Freeman, PLLC, Tulsa,
Oklahoma, for Plaintiffs-Appellees.

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**BALDOCK**, Circuit Judge.

Miner Electric, Inc., and Russell E. Miner ("Miner parties") filed a complaint in federal district court against Muscogee (Creek) Nation ("Nation"), a federally-recognized Indian tribe. In their complaint, the Miner parties sought declaratory and injunctive relief related to a forfeiture order entered by the Nation's District Court ("Tribal Court"). The Nation moved to dismiss the complaint based upon its sovereign immunity. The district court denied the motion to dismiss and subsequently granted summary judgment in favor of the Miner parties. On appeal, the Nation argues that the district court erred in denying its motion to dismiss and in granting summary judgment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we hold that the Nation has not waived, nor has Congress abrogated, its sovereign immunity. We therefore REVERSE and REMAND, with instructions to the district court to VACATE its judgment in favor of the Miner parties and to enter a judgment of DISMISSAL.

## I. Background

The relevant historical and procedural facts are undisputed. The Nation operates a casino on "Indian country" land, as defined by 18 U.S.C. § 1151. Mr. Miner parked a vehicle owned by Miner Electric in the casino parking lot on June 15, 2004, where it remained until the following day. On June 16, tribal security officers seized the vehicle, as well as suspected illegal drugs and

approximately $1,400 in cash found inside of the vehicle.  The officers issued

Mr. Miner a civil citation for Disorderly Conduct:  Possession of Controlled

Dangerous Substance.  He entered a guilty plea to the civil citation in the Tribal

Court on June 30, 2004, and was assessed and paid a civil fine and court costs.

That same day, the Nation served Mr. Miner with notice of a civil forfeiture

proceeding in the Tribal Court, seeking to forfeit to the Nation the vehicle and

cash seized on June 16, pursuant to tribal law.  Miner Electric intervened in the

forfeiture proceeding, asserting ownership of the vehicle.  After a hearing in

which the Miner parties participated, the Tribal Court entered an order on

January 10, 2005, forfeiting the property to the Nation.  The Tribal Court's order

was upheld on appeal by the Nation's Supreme Court on April 29, 2005.

The Miner parties filed this action in district court on June 23, 2005.  In

their complaint they sought relief from the forfeiture order on the basis that the

Tribal Court lacked jurisdiction over a quasi-criminal proceeding against

non-Indians.[1]  They contended that the forfeiture was a denial of their rights

under the Fifth and Eighth Amendments and Title I of the Indian Civil Rights Act

("ICRA"), 25 U.S.C. §§ 1301-03.  They also argued that the forfeiture was not

authorized by tribal statute.  The Miner parties sought declaratory and injunctive

relief, including an injunction against execution of the forfeiture order; a

---

[1]     The Miner parties' original complaint is not included in either party's
appendix.  References to their complaint pertain to their Amended Complaint
filed on December 1, 2005.

declaration that the Tribal Court did not have jurisdiction over them for purposes of the forfeiture proceeding; and a return of the seized property to them. In their complaint, the Miner parties asserted that they had exhausted all tribal remedies and that the ICRA operated as a waiver of tribal immunity.

The Nation moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1), arguing that it was not subject to suit based upon its sovereign immunity. The district court denied the motion, reasoning that because it had authority to determine whether the Tribal Court exceeded its jurisdiction in the forfeiture proceeding, it therefore also had jurisdiction over the Nation. The district court then granted summary judgment in favor of the Miner parties. The Nation filed a timely appeal.

## II. Discussion

"Tribal sovereign immunity is a matter of subject matter jurisdiction, which may be challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(1)." *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001) (citation omitted). We review de novo a district court's denial of a motion to dismiss based on tribal sovereign immunity. *See id.* at 1303.

### A. Tribal Sovereign Immunity

The Nation argues that dismissal was required under *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978), in which the Supreme Court observed that "Indian tribes have long been recognized as possessing the common-law

-4-

immunity from suit traditionally enjoyed by sovereign powers." The Court noted that "[t]his aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress." *Id.* It concluded that, absent Congressional authorization, "Indian Nations are exempt from suit." *Id.* (quotation omitted). The Court held specifically that Title I of the ICRA–the same statute upon which the Miner parties base some of their claims for relief–did not abrogate tribal sovereign immunity, and therefore suits against a tribe under the ICRA are barred. *Id.* at 59.

In *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998), the Supreme Court affirmed that, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." While noting that "[t]here are reasons to doubt the wisdom of perpetuating the doctrine," it nonetheless rejected the defendant's invitation to narrow the scope of tribal sovereign immunity. *Id.* at 758. The Court recognized that it had "taken the lead in drawing the bounds of tribal immunity," *id.* at 759, but it deferred to Congress to limit or abrogate the doctrine through legislation, as it has done with respect to limited classes of suits, *see id.* at 758-60.

This court has applied the Supreme Court's straightforward test to uphold Indian tribes' immunity from suit. In *Burrell v. Armijo*, 456 F.3d 1159, 1161 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 1132 (2007), non-Indian plaintiffs filed

suit in district court against a federally-recognized Indian tribe and other defendants, alleging civil rights violations and breach of a lease. A tribal court had previously dismissed the same claims based on the tribe's sovereign immunity and the plaintiffs asked the district court to declare the tribal court proceedings "null and void." *Id.* at 1165 (quotation omitted). But the tribe again asserted its immunity from suit in the district court. *Id.* Because the plaintiffs advanced no argument that Congress had abrogated the tribe's immunity, and we rejected their argument that the tribe had waived it, we held that the tribe was entitled to sovereign immunity and we dismissed it from the action. *Id.* at 1174, 1175. *See also Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1277-80 (10th Cir.) (reversing district court's denial of motion to dismiss where tribal defendants did not waive immunity and no statute authorized the suit), *cert. denied*, 127 S.Ct. 587 (2006); *E.F.W.*, 264 F.3d at 1304-05 (affirming dismissal of claims against tribal defendants on same grounds); *Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169-70 (10th Cir. 1992) (same).

The Nation contends on appeal, as it did in the district court, that its immunity from suit has not been abrogated by Congress, nor has the Nation unequivocally waived it. *See E.F.W.*, 264 F.3d at 1304 ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." (quotation omitted)). The Miner parties do not dispute either of these contentions on appeal and normally our analysis would end there. But they

contend that the district court correctly concluded that federal-question jurisdiction is sufficient to confer jurisdiction over the Nation in this action. The Miner parties also argue that the district court properly denied the Nation's motion to dismiss based on this court's decision in *Tenneco Oil Co. v. Sac & Fox Tribe of Indians of Oklahoma*, 725 F.2d 572, 575 (10th Cir. 1984), in which we stated that "[t]he presence or absence of federal question jurisdiction is to some extent tied to the sovereign immunity issue." They argue that, "[i]t was an implicit requirement in the court's ruling [in *Tenneco*] that there be a forum available to non-Indians to question and if necessary to prevent the unlawful exercise of tribal jurisdiction." Aplee. Br. at 9. In the alternative, the Miner parties assert that the district court had jurisdiction under the narrow exception to sovereign immunity recognized in *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980). We address each of these arguments in turn.

## B. *Federal-Question Jurisdiction*

The Miner parties argue that the district court properly denied the Nation's motion to dismiss because the court had jurisdiction to decide the federal question regarding the scope of the Tribal Court's jurisdiction. They assert that "[r]esolving the question of federal question jurisdiction necessarily involves delineating the reach of tribal sovereign immunity." Aplee. Br. at 6. The Nation counters that the district court erred in equating subject-matter jurisdiction based

-7-

upon a federal question under 28 U.S.C. § 1331 with subject-matter jurisdiction over the Nation. Although the district court acknowledged the Nation's contentions that its sovereign immunity had not been abrogated or waived, it did not grant the motion to dismiss on that basis. Instead, after reviewing cases defining the scope of tribal court jurisdiction and the origin and nature of civil forfeiture proceedings, the district court denied the motion, holding that

> [a] federal district court has the authority to determine whether a tribal court had the power to exercise civil subject matter jurisdiction over a non-Indian's property rights. Accordingly, the Court finds that it has jurisdiction over the Creek Nation, and the subject matter of this action, and the power to issue injunctive relief as requested in this proceeding.

Aplt. App. at 48 (citation omitted).

We disagree that federal-question jurisdiction negates an Indian tribe's immunity from suit. Indeed, nothing in § 1331 unequivocally abrogates tribal sovereign immunity. In the context of the United States' sovereign immunity, we have held that

> [w]hile 28 U.S.C. § 1331 grants the court jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States, it does not independently waive the Government's sovereign immunity; § 1331 will only confer subject matter jurisdiction where some other statute provides such a waiver.

*High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006) (quotation omitted), *cert. denied*, 127 S.Ct. 2134 (2007). Tribal sovereign immunity is deemed to be coextensive with the sovereign immunity of the United

-8-

States. *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 319-20 (10th Cir. 1982). Therefore, in an action against an Indian tribe, we conclude that § 1331 will only confer subject matter jurisdiction where another statute provides a waiver of tribal sovereign immunity or the tribe unequivocally waives its immunity. Thus, the district court erred in denying the Nation's motion to dismiss on the basis that it had jurisdiction to determine the extent of the Tribal Court's jurisdiction under § 1331.

## C. *Tenneco*

The Miner parties argue that the district court properly relied on *Tenneco*, 725 F.2d 572, in denying the Nation's motion to dismiss. The non-Indian plaintiff in *Tenneco* filed an action in district court against an Indian tribe and tribal officers, seeking declaratory and injunctive relief with respect to certain tribal ordinances it contended were unconstitutional, preempted by federal regulation, or exceeded the scope of Indian sovereignty over non-Indians. *Id.* at 574. We noted that Indian tribes' "limited sovereign immunity from suit is well-established" and that the tribe in that case "ha[d] not chosen to waive that immunity." *Id.* We then proceeded to consider whether the tribe's sovereign immunity extended to the tribal-officer defendants, holding:

> When the complaint alleges that the named officer defendants have acted outside the amount of authority that the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked. If the sovereign did not have the power to make a law, then the official by necessity acted outside the scope of his authority in

enforcing it, making him liable to suit. Any other rule would mean that a claim of sovereign immunity would protect a sovereign in the exercise of power it does not possess.

*Id.* (citation omitted). Thus, we concluded that the tribal officer defendants were not protected by the tribe's immunity and that the suit could go forward *against them. Id.* at 575. We noted that our holding was consistent with *Santa Clara Pueblo*, where the Supreme Court held that a tribal officer was not protected by the tribe's immunity from suit. *See Tenneco*, 725 F.2d at 574-75 (citing *Santa Clara Pueblo*, 436 U.S. 49, 59). We also concluded that, in the suit against the tribal officers, the extent of the tribe's sovereignty to enact the challenged ordinances raised a federal issue sufficient for federal-question jurisdiction in the district court. *See id.* at 575.

Like this case, *Tenneco* involved two different aspects of an Indian tribe's "sovereignty": its immunity from suit and the extent of its power to enact and enforce laws affecting non-Indians. But it does not stand for the proposition, as the Miner parties suggest, that an Indian tribe cannot invoke its sovereign immunity from suit in an action that challenges the limits of the tribe's authority over non-Indians. On the contrary, we held in *Tenneco* that the tribe was immune from suit. *See id.* at 574. Here, because the Miner parties named only the Nation itself as a defendant, we do not reach the question whether any of the Nation's *officials* would be subject to suit in an action raising the same claims.

-10-

## D. *Dry Creek Exception*

The Miner parties' final argument against the Nation's immunity from suit relies on this court's decision in *Dry Creek*, 623 F.2d 682, in which we recognized an exception to the Supreme Court's ruling in *Santa Clara Pueblo*. The non-Indian plaintiffs in *Dry Creek* were involved in a land-related dispute with two Indian tribes. *See* 623 F.2d at 684. They originally sought a remedy in a tribal court, but were refused access to that forum. In response to the same claims in federal court, the tribes challenged the district court's jurisdiction. *See id.* We held that the district court erred in dismissing the claims against the tribes. We distinguished *Santa Clara Pueblo*, noting that the Supreme Court in that case emphasized the availability of the tribal courts and the intra-tribal nature of the issues, whereas in *Dry Creek* the plaintiffs were non-Indians who had been denied any remedy in a tribal forum. *Id.* at 685. This court later expressly limited the holding in *Dry Creek* to apply only where the tribal remedy is "shown to be nonexistent by an actual attempt" and not merely by an allegation that resort to a tribal remedy would be futile. *White v. Pueblo of San Juan*, 728 F.2d 1307, 1313 (10th Cir. 1984). The *Dry Creek* rule has "minimal precedential value"; in fact, this court has never held it to be applicable other than in the *Dry Creek* decision itself. *Walton*, 443 F.3d at 1278 (quotation omitted).

The Miner parties clearly fail to come within the narrow *Dry Creek* exception to tribal sovereign immunity. Considering whether they could have

brought this action in the Tribal Court rather than the district court, they hypothesize that the Nation would have claimed immunity from suit in that forum as well. But they must show an actual attempt; their assumption of futility of the tribal-court remedy is not enough. Moreover, "[a] tribal court's dismissal of a suit as barred by sovereign immunity is simply not the same thing as having no tribal forum to hear the dispute." *Walton*, 443 F.2d at 1279. In any event, the Miner parties participated in the Tribal Court forfeiture proceeding and they affirmatively contended in their district court complaint that they have exhausted all tribal remedies. This certainly belies their assertion that such remedies were "nonexistent," as is required by *White*, 728 F.2d at 1313.

### III. Conclusion

We conclude that, in the absence of congressional abrogation of tribal sovereign immunity from suit in this action, or an express waiver of its sovereign immunity by the Nation, the district court erred in failing to grant the Nation's motion to dismiss. The judgment of the district court is REVERSED and this case is REMANDED, with instructions to the district court to VACATE the judgment in favor of Miner Electric, Inc., and Russell E. Miner and to enter a judgment of DISMISSAL.