**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TERRENCE BRESSI,
          *Plaintiff-Appellant,*

          v.

MICHAEL FORD; ERIC O'DELL;
GEORGE TRAVIOLIA; RICHARD
SAUNDERS; UNITED STATES OF
AMERICA, and JOSEPH DELGADO,*
          *Defendants-Appellees.*

No. 07-15931

D.C. No.
CV-04-00264-JMR

OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted
November 20, 2008—San Francisco, California

Filed August 4, 2009

Before: William C. Canby, Jr. and Kim McLane Wardlaw,
Circuit Judges, and Richard Mills,** District Judge

Opinion by Judge Canby

---

*Joseph Delgado is substituted for his predecessor Richard Saunders as
Chief of Police. Because Richard Saunders is also being sued in his offi-
cial capacity, he remains in the case.

**The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

10143

## COUNSEL

David J. Euchner, Tucson, Arizona; James P. Harrison, The First Amendment Project, Oakland, California; for the plaintiff-appellant.

Roger W. Frazier, Gust Rosenfeld P.L.C., Tucson, Arizona; Gerald S. Frank, Assistant United States Attorney, Tucson, Arizona; for the defendants-appellees.

Samuel F. Daughety, Assistant Attorney General, Tohono O'odham Nation, Sells, Arizona, for the amicus curiae.

## OPINION

CANBY, Circuit Judge:

Plaintiff-Appellant Terrence Bressi is a non-Indian who filed this action against four officers of the Tohono O'odham Police Department ("Tribal Police Department") and the United States after he was stopped and cited at a roadblock on a state highway crossing the Tohono O'odham Nation Indian Reservation. Defendant Officers Michael Ford, Eric O'Dell, and George Traviolia all had some contact with Bressi at the roadblock; Defendant Officer Richard Saunders was acting police chief at the time—not present at the roadblock but alleged to have ordered it. Bressi sought relief pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against these individual Officers for the operation of the roadblock. He also sought relief under § 1983 and the right to privacy provision of art. 2, § 8 of the Arizona Constitution for his subsequent citation and arrest. Finally, Bressi sought relief under the Federal Tort Claims Act against the United States on a malicious prosecution claim arising out of Bressi's aborted prosecution.

The district court granted summary judgment to the Officers and the United States separately.[1] The court held that the

---

[1] The Officers filed a motion to dismiss for lack of subject matter jurisdiction, presenting a factual challenge to the court's jurisdiction on the ground of tribal sovereign immunity. Fed. R. Civ. P. 12(b)(1). The court converted the motion into one for summary judgment after deciding that the jurisdictional and substantive questions were intertwined. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The United States moved for dismissal under a summary judgment standard.

Officers' operation of the roadblock was purely a tribal endeavor; therefore, sovereign immunity barred Bressi's § 1983 and *Bivens* actions. *See United States v. Oregon*, 657 F.2d 1009, 1013 n.8 (9th Cir. 1981) ("[Sovereign immunity] extends to tribal officials when acting in their official capacity and within their scope of authority."). The court also held that Bressi's malicious prosecution claim under the Federal Tort Claims Act failed because there was an independent prosecutorial decision to pursue the complaint against Bressi.

We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part the judgment of the district court.

## I

In December 2002, the Tribal Police Department was operating a roadblock on an Arizona state highway that runs through the Nation's reservation. The roadblock itself was wholly within the reservation's borders. The Officers operating the roadblock were tribal officers who were authorized to enforce tribal law against any Indian, and to investigate any state or federal law violation by any person. The Nation did not authorize the Officers to enforce federal law; they could eject non-tribal members from tribally-controlled areas or turn them over to federal custody. Arizona law, however, did authorize them to enforce state law by virtue of their certification with the Arizona Peace Officer Standards and Training Board ("AZ POST"). Thus, the Officers could enforce tribal and state law, but not federal law.

The Nation's tribal law allows roadblocks to check for sobriety, drivers' licenses, registration, and possession of alcohol. *See Tohono O'odham Nation v. Ahill*, No. CR12-1762-88 (Jud. Ct. Tohono O'odham Nation Oct. 23, 1989). Bressi was stopped at a roadblock tribal authorities set up pursuant to this authorization. He insisted that the stop was unconstitutional, and refused to produce his driver's license or other identification or to give the Officers his name. After

about four hours of intermittent exchanges between the Officers and Bressi, during which time Bressi was handcuffed and taken to the side of the road, the Officers cited Bressi for violating two Arizona laws: Ariz. Rev. Stat. § 28-1595(B) (failure to provide a driver's license or proof of identity) and Ariz. Rev. Stat. § 28-622(A) (failure to comply with a police officer's lawful order). Bressi was allowed to leave after he signed the citations.

The Pima County Justice Court dismissed without prejudice the county attorney's complaint against Bressi because a copy of the citation did not reach the court in time. Bressi then sued the Officers in state court. Shortly thereafter a county prosecutor re-filed the complaint against Bressi. This re-filed complaint was again dismissed after the prosecution was unable to produce records that the court had ordered. Bressi then amended his complaint to include a malicious prosecution claim. At this point, the United States substituted itself as the defendant for that claim and removed the action to federal district court.[2] Bressi ultimately filed a third amended complaint in district court alleging § 1983 and *Bivens* claims against the Officers.

## II

We review de novo the district court's order granting a motion for summary judgment. *McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008).

---

[2]The United States removed on the ground that the Officers were operating under a contract between the Tribal Police Department and the Bureau of Indian Affairs that provided coverage of the Federal Tort Claims Act to the Officers. Because at least one common law tort, malicious prosecution, was asserted against the Officers, the United States substituted itself as defendant on that claim.

## III

### A. The Roadblock

#### 1. Section 1983 Action

[1] Bressi's primary contention is that the roadblock conducted by the Officers did not meet the federal constitutional standards applicable to suspicionless roadblocks. *See City of Indianapolis v. Edmond*, 531 U.S. 32 (2000).[3] Because the United States Constitution does not restrict actions by tribal governments, however, Bressi cannot succeed in a claim against the Officers for deprivation of constitutional rights to the extent that the Officers were acting under color of tribal law. *See R. J. Williams Co.*, 719 F.2d at 982.[4] The Officers concede that they were acting under color of state law pursuant to their AZ POST certification when they arrested Bressi and then released him after issuing citations for violations of Arizona law.[5] The question that is crucial to Bressi's challenge to the roadblock itself is whether the Officers were acting under color of state law, and whether they violated Bressi's constitutional rights, when they stopped and questioned Bressi at the roadblock. If there is a factual issue as to

---

[3]In addition to his other constitutional claims, Bressi asserts that his First Amendment right to travel was violated. Contrary to Bressi's assertions, he failed to raise this issue in the district court. His presentation of an argument based on the Arizona constitutional right to privacy was not sufficient to raise a claim based on the First Amendment right to travel. Accordingly, the First Amendment claim is waived. Bressi also raises for the first time the argument that, because § 1983 is a general statute, it applies to the Officers acting under color of tribal law, citing *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99 (1960). This argument is squarely foreclosed by *R. J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 (9th Cir. 1983).

[4]The district court ruled that, to the extent that the Officers acted under color of tribal law, they were entitled to tribal sovereign immunity.

[5]Bressi's claims relating to his arrest and release after the issuance of citations are discussed below.

whether the Officers can "fairly be said to be" state actors during the operation of the roadblock, summary judgment is inappropriate. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

In holding that the tribal Officers were acting under color of tribal law when they stopped Bressi at the roadblock, the district court relied in considerable part on the authority of tribal officers to investigate violations of state and federal law by any person within the Reservation. When tribal officers discover such violations, they may detain the violators in order to deliver them to state or federal authorities. *See Ortiz-Barraza v. United States*, 512 F.2d 1176, 1180 (9th Cir. 1975); *State v. Schmuck*, 850 P.2d 1332 (Wash. 1993). The district court ruled, in essence, that stopping Bressi at the roadblock was an exercise of such tribal authority.

The situation is complicated, however, by the fact that the roadblock was set up on a state highway. Unlike the case within most of the reservation, the Nation is not a gate-keeper on a public right of way that crosses the reservation. *See Strate v. A-1 Contractors*, 520 U.S. 438, 455-56 (1997). The usual tribal power of exclusion of nonmembers does not apply there. *See id.*

**[2]** On the other hand, the state highway is still within the reservation and is part of Indian country. 18 U.S.C. § 1151(a). The tribe therefore has full law enforcement authority over its members and nonmember Indians on that highway. *See United States v. Lara*, 541 U.S. 193, 210 (2004) (upholding 25 U.S.C. § 1301(2), in which Congress reaffirmed tribal criminal jurisdiction over nonmember Indians). The tribe accordingly is authorized to stop and arrest Indian violators of tribal law traveling on the highway. In the absence of some form of state authorization, however, tribal officers have no inherent power to arrest and book non-Indian violators. *See Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978). This limitation has led to obvious practical difficulties. For

example, a tribal officer who observes a vehicle violating tribal law on a state highway has no way of knowing whether the driver is an Indian or non-Indian. The solution is to permit the officer to stop the vehicle and to determine first whether or not the driver is an Indian. In order to permit tribal officers to exercise their legitimate tribal authority, therefore, it has been held not to violate a non-Indian's rights when tribal officers stop him or her long enough to ascertain that he or she is, in fact, not an Indian. *See Schmuck*, 850 P.2d at 1337. If the violator turns out to be a non-Indian, the tribal officer may detain the violator and deliver him or her to state or federal authorities. *Id.*; *see Strate*, 520 U.S. at 456 n.11.

**[3]** This rule permitting tribal authority over non-Indians on a public right-of-way is thus a concession to the need for legitimate tribal law enforcement against Indians in Indian country, including the state highways. The amount of intrusion or inconvenience to the non-Indian motorist is relatively minor, and is justified by the tribal law enforcement interest. Ordinarily, there must be some suspicion that a tribal law is being violated, probably by erratic driving or speeding, to cause a stop, and the amount of time it takes to determine that the violator is not an Indian is not great. If it is apparent that a state or federal law has been violated, the officer may detain the non-Indian for a reasonable time in order to turn him or her over to state or federal authorities. *Id.*

**[4]** The intrusion and inconvenience becomes significantly greater, however, when a roadblock is placed across a state highway. The tribe has no general power of exclusion on the right-of-way. *All* vehicles are stopped, with no suspicion required. The likelihood is substantial that a great proportion of those stopped will be non-Indians not subject to tribal criminal jurisdiction. Yet the tribe does have a legitimate purpose in stopping all vehicles with Indian operators to check for vio-

lations of tribal drunken-driving and safety laws, and other violations for which roadblocks are authorized by tribal law.[6]

**[5]** We conclude that a roadblock on a public right-of-way within tribal territory, established on tribal authority, is permissible only to the extent that the suspicionless stop of non-Indians is limited to the amount of time, and the nature of inquiry, that can establish whether or not they are Indians. When obvious violations, such as alcohol impairment, are found, detention on tribal authority for delivery to state officers is authorized. But inquiry going beyond Indian or non-Indian status, or including searches for evidence of crime, are not authorized on purely tribal authority in the case of non-Indians.

**[6]** Applying this analysis to the present record, we reverse the summary judgment in favor of the Officers on the § 1983 claim. The record indicates that the Officers realized quickly that Bressi was not impaired. It is not clear from the record exactly when or how the Officers determined that Bressi was not an Indian. There is no dispute in the evidence, however, that the Officers, after stopping Bressi, did not confine themselves to inquiring whether he was or was not an Indian. Their general request for identification was permissible as part of that determination, but they specifically requested Bressi to show his drivers' license and immediately treated his refusal as a violation of state law. Once they departed from, or went beyond, the inquiry to establish that Bressi was not an Indian, they were acting under color of state law. These actions established, beyond any dispute of fact, that the roadblock functioned not merely as a tribal exercise, but also as an instrument for the enforcement of state law. We emphasize

---

[6]Such roadblocks are subject to any restrictions that may be imposed by the prohibition of unreasonable searches and seizures of the Indian Civil Rights Act, 25 U.S.C. § 1302(2), but, except for habeas corpus challenges, any private right of action under that Act lies only in tribal court. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978).

function, rather than intent, because function is a more readily ascertainable guide to conduct and furnishes a more practical rule for determining whether a roadblock is operated (at least in part) under color of state law.

[7] Of course, the Officers were free to set up a roadblock for the purpose of checking the drivers' licenses, vehicle registrations and the sobriety of non-Indian motorists, because the Officers were authorized to enforce state law. *See Edmond*, 531 U.S. at 39 (suggesting that roadblock was permissible for checking licensing, registration and vehicle inspection compliance); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990) (upholding constitutionality of checkpoint for sobriety). But any such roadblock must meet the constitutional requirements set by the Supreme Court for such suspicionless stops. *See Edmond*, 531 U.S. 32 (holding roadblock for general enforcement of criminal drug laws unconstitutional). Bressi alleges that the roadblock did not satisfy those requirements; among other things, his affidavit asserts that the roadblock was not total and that some cars were permitted to drive by, which in his view rendered his suspicionless stop discretionary and unlawful. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (holding discretionary suspicionless stops, as opposed to roadblock, unconstitutional). There are also questions of fact concerning instructions that may or may not have governed operation of the roadblock. Bressi is entitled to pursue his claim of constitutional deficiencies in the roadblock on remand.[7]

We recognize that one result of our ruling is that tribal officers who are authorized to enforce state as well as tribal law,

---

[7]Because we reverse the dismissal of Bressi's claim for damages under § 1983, we also reverse the district court's denial of his claim for injunctive relief. The district court held that Bressi could not show a constitutional violation—because of sovereign immunity—and he was thus not entitled to injunctive relief. Upon remand, Bressi has the opportunity to demonstrate such a constitutional violation.

and proceed to exercise both powers in the operation of a roadblock, will be held to constitutional standards in establishing roadblocks. That result is consistent with our prior decision in *Evans v. McKay*, 869 F.2d 1341, 1348 (9th Cir. 1989), which held that officers acting pursuant to both tribal and city authority in making arrests were subject to a § 1983 claim. This result also appears to us to be an inevitable consequence of the accommodation of tribal authority over rights-of-way within Indian country and the rights of non-Indians to travel those rights-of-way. If a tribe wishes to avoid such constitutional restraints, its officers operating roadblocks will have to confine themselves, upon stopping non-Indians, to questioning to determine non-Indian status and to detention only for obvious violations of state law.

**[8]** For the above reasons, we reverse the summary judgment on Bressi's § 1983 claim against the Officers for the roadblock stop, and remand for further proceedings on that claim. Because Officer Saunders may have authorized the roadblock and directed some of the procedures or policies involved in Bressi's § 1983 claim, we include him in the reversal of the § 1983 claim relating to the operation of the roadblock. We leave to the district court to address in the first instance any claims of qualified immunity that may be asserted by any of the Officers with regard to the roadblock.

## 2. *Bivens* Action

**[9]** Bressi's *Bivens* claim requires a showing that the tribal officers acted under color of federal authority. *Bivens*, 403 U.S. at 389. Under the "symbiotic relationship" test that is often discussed in *Bivens* cases, there must exist some interdependence between the federal government and the Tribal Police Department during the operation of the roadblock. *See Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1342-43 (9th Cir. 1997); *Rendell-Baker v. Kohn*, 457 U.S. 830, 842-43 (1982).

**[10]** We are satisfied that the district court correctly determined that there is no issue of fact as to the Officers' status as federal actors in operating the roadblock. When Bressi arrived at the roadblock, he witnessed U.S. Customs and Border Patrol agents on the scene. Bressi's only interaction with a federal agent occurred after he refused the Officers' commands; Customs Agent William Dreeland walked up to Bressi's car and informed him that he should comply with the Officers' request. In their affidavits, the Officers declared that no federal agents were consulted for the initiation of the roadblock—at most Officer Ford may have contacted the U.S. Customs and Border Patrol agencies beforehand to alert them that the Tribal Police Department could be sending suspected federal law violators their way. Merely referring suspected federal law violations to the appropriate authorities is not tantamount to acting under color of federal law. *See Cabrera v. Martin*, 973 F.2d 735, 742-44 (9th Cir. 1992) (requiring substantial cooperation between state and federal actors in order to find that the federal actors were acting under color of state law; de minimis support role was insufficient). Agent Dreeland's independent decision to approach Bressi does not amount to a substantial nexus between the Officers' conduct and that of the federal agencies.

**[11]** The mere presence of federal agents at the roadblock does not convert the Officers into federal actors. All of the evidence indicates that the federal agents were present to deal with any federal violations that turned up. The evidence is insufficient to create an issue of fact as to whether the Officers were acting under federal authority in establishing the roadblock, which was clearly a tribal initiative.

## B.    The Arrest and Citation

### 1.    Section 1983

The district court properly ruled that probable cause supported the arrest and citation of Bressi for state law violations

in refusing to show his drivers' license and refusal to obey a lawful order of an officer. In that regard, no constitutional rights of Bressi were infringed.

Bressi's attack on his arrest and citation are derivative, however, of his challenge to the constitutional validity of the roadblock. If the roadblock were to be determined unconstitutional on remand, the result might taint the subsequent arrest and citations. *See Brendlin v. California*, 551 U.S. 249 (2007) (holding that passenger may challenge arrest as "seizure" following unlawful traffic stop); *United States v. Millan*, 36 F.3d 886 (9th Cir. 1994) (holding that unlawful stop of vehicle tainted subsequent interrogation and search). The district court anticipated this possibility, however. It held that, even if the stop was determined to be unlawful and to taint the probable cause for the arrest, this principle was not clearly established law at the time of the arrest. Thus, the Officers were entitled to qualified immunity; reasonable officers would not have believed that the subsequent arrest violated Bressi's constitutional rights. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001) (holding that immunity is to be judged from standpoint of reasonable officer).

**[12]** We agree with the district court's analysis of qualified immunity with regard to the arrest and citations, and we accordingly affirm the district court's dismissal of that claim with regard to all of the Officers.[8]

---

[8]Officer Saunders was not present at the roadblock, so the district court construed Bressi's claim against him as one for respondeat superior liability and dismissed it. To be liable under § 1983, a state actor must be personally involved to some extent in the deprivation of a federal right. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). To the extent that Bressi seeks recovery against Saunders for the arrest, the district court is correct. Saunders did not direct the arrest, nor did he know of it until after the fact.

## 2.    Arizona Constitution

**[13]** The district court properly granted the Officers summary judgment on Bressi's claim that they violated his privacy rights under art. 2, § 8 of the Arizona Constitution. Arizona applies an objectively reasonable test to determine whether one's privacy rights have been violated. *See State v. Jeney*, 787 P.2d 1089, 1092-93 (Ariz. Ct. App. 1989). For the same reasons that supported qualified immunity for the arrest, the district court properly determined that it was objectively reasonable to arrest Bressi for failing to show his drivers' license or to obey the lawful order of an officer. There was accordingly no violation of the state constitutional right to privacy.

## C.    Malicious Prosecution Claim

**[14]** The district court also properly dismissed Bressi's malicious prosecution claim under the Federal Tort Claims Act against the United States. There is no evidence contradicting the United States' assertion that the Pima County Attorney independently decided to re-file the complaint against Bressi. Arizona law[9] holds that when a criminal prosecutor judges the propriety of proceeding with a case and acts upon his own initiative in doing so, a malicious prosecution claim will not lie. *Walsh v. Eberlein*, 560 P.2d 1249, 1252 (Ariz. Ct. App. 1976). Here, Bressi's only supporting evidence is the temporal proximity between the filing of his claims against the Officers and Officer Traviolia's re-filing of the charges against him in the Pima County Justice Court. Officer Traviolia's affidavit states that he did not do so in retaliation, but the significant factor is that the county attorney independently decided to pursue the charges. Thus, there is no genuine issue of fact with respect to this claim.

---

[9]Because this claim arises under the Federal Tort Claims Act, we look to state substantive law. *See Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001), *cert. denied*, 534 U.S. 1082 (2002).

**IV**

We reverse the district court's grant of summary judgment on Bressi's § 1983 action as it relates to the operation of the roadblock, and we remand that claim for further proceedings. We affirm the dismissal of Bressi's claims relating to his arrest and citations. We also affirm the grants of summary judgment on the *Bivens* action, the right to privacy under the Arizona Constitution, and the malicious prosecution claim.[10] The parties will bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

---

[10]The Officers' motion to strike Bressi's right-to-travel and his *Tuscarora* argument is granted. Their motion for sanctions is denied.