

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CANDEE WASHINGTON, and all other persons similarly situated, | ) ) ) | No. 75670-2-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) ) | UNPUBLISHED OPINION |
| DIRECTOR OF THE DEPARTIMENT OF LICENSING, a subdivision of the State of Washington, in his/her official capacity; JOHN and/or JANE DOE, unidentified Swinomish tribal police officers and general authority police officers pursuant to chapter 10.92 RCW in their official capacity; and all tribal police officers involved in the seizure and forfeiture of automobiles owned by non-Native Americans as individuals, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | FILED: June 26, 2017 |

APPELWICK, J. — After losing her vehicle to the Swinomish Tribe in civil forfeiture, Washington filed this suit against the Department of Licensing and unnamed Swinomish police officers. The trial court dismissed the case under CR 19 for failure to join an indispensable party: the Tribe. We affirm.

## FACTS

The facts are not disputed. Candee Washington is not a tribal member. The Swinomish Indian Tribal Community (Tribe), pursuant to Swinomish Tribal Code § 4-10.050, succeeded in a civil forfeiture action against her vehicle in

Swinomish tribal court.[1] She did not contest the tribal court forfeiture proceeding. The Department of Licensing (Department) issued a new certificate of title to reflect the change in ownership.

Washington filed a class action complaint in Skagit County Superior Court against John and/or Jane Doe Swinomish Tribal police officers and the Director of the Department of Licensing. She requested certification of two classes, one class whose property has been seized by the Tribe, and one class whose property has been seized by other tribes. Against the Department, she sought a judgment for every certificate of ownership "changed based upon presentation of an Indian order of forfeiture." And, against the unnamed officers, she sought a judgment and 42 U.S.C. § 1983 damages.

The Department moved to dismiss under CR 19 for failure to join the tribe. The trial court granted this motion. Washington appealed directly to the Washington Supreme Court. But, the Supreme Court transferred the case to this court.

## DISCUSSION

Washington makes three arguments. First, her primary argument is that the trial court erred in dismissing this case under CR 19 on sovereign immunity grounds. Second, in a motion to modify a commissioner's order, Washington

---

[1] Washington notes that the Swinomish law is less favorable to claimants in forfeiture proceedings than Washington law. She notes that it allows forfeiture of a vehicle if even an occupant of the vehicle possesses a controlled substance, and there is no good faith exception for an unwitting owner. And, here the order of forfeiture noted that the vehicle merely contained occupants who possessed heroin and its paraphernalia, not that Washington herself possessed or distributed the heroin and paraphernalia.

argues that this case should be remanded to the trial court for factual development. Third, Washington seeks attorney fees.

I.    CR 19 Joinder

Washington argues that the trial court erred in dismissing this case under CR 19. CR 19 addresses when the joinder of absent parties is needed for a just adjudication. Auto. United Trades Org. v. State, 175 Wn.2d 214, 221, 285 P.3d 52 (2012) (AUTO). Where the feasibility of joinder is contested, courts engage in a three step analysis. Id. Under CR 19(a), the court first determines whether absent persons are "necessary" for a just adjudication. Id. at 221-22. Next, if the absentees are necessary, the court determines whether it is feasible to order the absentee's joinder. Id. at 222. Joinder is not feasible when tribal sovereign immunity applies. Id. Third, if joining a necessary party is not feasible, the court considers whether a party is "indispensable" under CR 19(b) such that their inability to be joined defeats the action. Id. at 222, 227.

We review a trial court's decision under CR 19 for an abuse of discretion, and review any legal determinations necessary to that decision de novo. Id. at 222. The party urging dismissal bears the burden of persuasion. Id. However, if it appears from an initial appraisal of the facts that there is an unjoined indispensable party, the burden rests with the party resisting dismissal. Id. A failure to meet that burden will result in the joinder of the party or dismissal of the action. Id.

A.     Necessary Party

CR 19's first element asks whether a party is a necessary party. CR 19(a)(2). This subsection provides that an absent party is "necessary" when it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (A) as a practical matter impair or impede his ability to protect that interest." Id. To decide whether this is met, we first determine whether the absent party claims a legally protected interest in the action, and second, whether the absentee's ability to protect that interest will be impaired or impeded. AUTO, 175 Wn.2d at 223.

Washington does not contest that the Tribe is a necessary party. The Tribe has a sufficient interest in the action and is a necessary party.

B.     Feasible to Join

The key inquiry in this case is whether joinder of the necessary party is feasible. This question turns on whether the Tribe and its officers may assert sovereign immunity here.

In keeping with their sovereign status, it is well settled that Native American tribes enjoy the common law immunity from suit traditionally accorded to sovereign entities. Id. at 226. This protects tribes from suit absent an explicit and unequivocal waiver or abrogation. Wright v. Colville Tribal Enter. Corp., 159 Wn.2d 108, 112, 147 P.3d 1275 (2006).

Washington argues that, because the Tribal officers acted outside the scope of their tribal authority, the Tribe voluntarily waived sovereign immunity

4

under RCW 10.92.020(2)(a). That statute states that tribal police officers may act as and exercise the power of other general authority Washington peace officers. Id. But, the Tribe must carry professional liability insurance that covers the officers' actions while working in their capacity as Washington peace officers. Id. And, most importantly for this case, the tribe and insurer must waive any sovereign immunity defense, up to policy limits, in actions that arise from conduct in their capacity of Washington officers:

> Each policy of insurance issued under this chapter must include a provision that the insurance shall be available to satisfy settlements or judgments arising from the tortious conduct of tribal police officers when acting in the capacity of a general authority Washington peace officer, and that to the extent of policy coverage neither the sovereign tribal nation nor the insurance carrier will raise a defense of sovereign immunity to preclude an action for damages under state or federal law, the determination of fault in a civil action, or the payment of a settlement or judgment arising from the tortious conduct

RCW 10.92.020(2)(a)(ii). In other words, the Tribe obtains the authority for its police to act as State officers, in exchange for waiving its sovereign immunity for that conduct, up to policy limits. See id.

Washington argues that the tribal officers' interaction with Washington and seizure of her vehicle exceeded their tribal authority over nonmembers. Therefore, she argues, the only other possible basis for the Tribe's actions must have been its authority to enforce state laws pursuant to chapter 10.92 RCW. And, if that is the case, sovereign immunity would be waived under RCW 10.92.020(2)(a)(ii) as to "conduct of tribal police officers when acting in the capacity of a general authority Washington peace officer."

Washington correctly argues that tribes generally cannot exercise criminal authority over nonmembers. Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 195, 98 S. Ct. 1011, 55 L. Ed. 2d 209 (1978). But, in Montana v. United States, 450 U.S. 544, 565-66, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981), the United States Supreme Court held that tribes retain civil authority to regulate the conduct of nonmembers in two areas. First, they may regulate the conduct of nonmembers who enter into consensual relationships with the Tribe through commercial dealings. Id. Second, they may regulate the conduct of nonmembers on lands within their reservation when that conduct threatens or directly affects political integrity, economic security, or the health or welfare of the tribe. Id. This second exception is at issue here.

Drug enforcement laws are actions taken to protect the health, safety, and welfare of the public. See, e.g., 21 U.S.C. § 801(1). Under the federal Controlled Substances Act[2] scheme, forfeitures are civil in nature.[3] See United

[2] 21 U.S.C. §§ 801-904.

[3] This distinction between civil and criminal actions was recently highlighted in a similar case in federal court. See Wilson v. Doe, No. C15-629 JCC, 2016 WL 1221655 (W.D. Wash. Mar. 29, 2016). In that case, the Lummi tribe sought forfeiture of Wilson's vehicle after discovering marijuana inside while on the Lummi reservation. See id. at *3. Wilson was not Native American. See id. at *2. Wilson challenged the Lummi tribe's authority to forfeit a nonmember's vehicle, and cited Oliphant for support. Id. at *3. The federal court noted that, because forfeiture was a civil matter, Oliphant did not bar the tribe's authority to forfeit the vehicle of a nonmember. Id.

A similar question was presented in Pearson v. Dir. of the Dep't of Licensing, No. C15-0731 JCC, 2016 WL 3386798 (W.D. Wash. June 20, 2016). Pearson, who was not part of the Swinomish tribe, was pulled over on the Swinomish reservation by a Swinomish officer. Id. at *3. The Tribe obtained forfeiture after discovering drugs in the vehicle. Id. at *1. Pearson filed suit for damages and declaratory relief against the Department and named Swinomish officers. Id. at *2. The court granted a named Swinomish officer's motion for

6

States v. Ursery, 518 U.S. 267, 270-71, 274, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996). The same is true under state law. See State v. Catlett, 133 Wn.2d 355, 366-67, 945 P.2d 700 (1997). These actions are against the property. Ursery, 518 U.S. at 295-96. The tribal statute under which these vehicles were forfeited, Swinomish Tribal Code § 4-10.050, is similar. This dispute involves a forfeiture of property, with notice to the owner, based on a criminal violation of the tribal drug code. We conclude it is an in rem civil proceeding concerning the health or welfare of the Tribe.

Washington cites Miner Electric, Inc. v. Muscogee (Creek) Nation, 464 F. Supp. 2d 1130 (N.D. Okla. 2006), rev'd 505 F.3d 1007 (10th Cir. 2003), as a correct application of Montana's second exception to tribal civil forfeiture authority. Miner was not a tribe member. Id. at 1132. Muscogee tribal police discovered drugs in Miner's vehicle while it was parked at the Muscogee casino. Id. at 1133. The Muscogee police succeeded in a forfeiture proceeding against the vehicle in tribal court. Id. The federal district court held that the forfeiture was invalid, because the Muscogee police had no authority to forfeit property that belongs to nonmembers. Id. at 1137. Washington urges us to adopt the Miner district court's reasoning that the Tribe exceeded its authority, and as a result may not assert sovereign immunity.

---

summary judgment. Id. at *5. It held that, because the suit against the named Swinomish officer questioned the Tribe's jurisdiction over Pearson, sovereign immunity barred the suit. Id. at *4.

But, Miner was reversed on appeal. See Miner Elec., Inc. v. Muscogee (Creek) Nation, 505 F.3d 1007, 1012 (10th Cir. 2007). As Washington acknowledges, the appellate court rejected the trial court's reasoning as an overly narrow conception of sovereign immunity. Id. The appellate court held that the applicable authority "does not stand for the proposition . . . that an Indian tribe cannot invoke its sovereign immunity from suit in an action that challenges the limits of the tribe's authority over non-Indians." Id. Because the appellate court held that sovereign immunity barred suit against the Muscogee, it explicitly declined to address whether the tribe had authority to seize nonmembers' property. Id. Therefore, we decline to adopt the reasoning from the federal district court when that decision was reversed on sovereignty grounds.

Washington also cites Bressi v. Ford, 575 F.3d 891 (9th Cir. 2009) for her argument that the Miner trial court's analysis regarding tribal authority was sound, and that the officers here were not acting under tribal law. In Bressi, tribal officers stopped a nonmember at a roadblock on an Arizona state highway that ran through the reservation. Id. at 893-94. Bressi refused to present his identification, because he alleged the stop was unconstitutional. Id. at 894. So, the officers handcuffed him and cited him for failure to provide a license and failure to follow an officer's order. Id. The tribal officers had authority to enforce state law, so they eventually cited him for two state law violations arising from his failure to cooperate. Id. Bressi brought a lawsuit arguing that the officers acted outside their tribal law authority and did not meet constitutional standards for

roadblocks. See id. at 895. The court held that the roadblock and initial stop were lawful, but the officers acted outside the scope of their tribal authority. Id. at 897. Rather, it held that they instead acted under state authority, because they quickly realized Bressi was not impaired, but nevertheless treated his refusal to cooperate as a state law violation. Id.

But, Bressi is critically different because it involved tribal officers writing a criminal citation for a violation of state law. Id. at 894. They were obviously acting in a state officer capacity, because they cited Bressi for violation of state law. See id. But, Washington's forfeiture order was based purely on tribal law. And, it was an in rem forfeiture proceeding, not a purely criminal matter like Bressi.

Washington has not established that state laws were implicated in the forfeiture. She has not established that the officers were acting in the capacity of Washington state peace officers, rather than tribal officers. Absent that, she has not established that statutory immunity waiver applied.

But, Washington argues that even if the RCW 10.92.020 waiver does not apply, the officers may not assert sovereign immunity because they acted outside of the scope of their authority. Whether tribal sovereign immunity applies is a question of federal law. AUTO, 175 Wn.2d at 226. Such sovereign immunity extends to tribal officials acting within the scope of their authority. Wright, 159 Wn.2d at 116.

Washington cites Maxwell v. County of San Diego, 708 F.3d 1075 (9th Cir. 2013) and Pistor v. Garcia, 791 F.3d 1104, 1113-14 (9th Cir. 2015) for her argument that, irrespective of whether they were acting as Washington peace officers, the officers acted outside of their authority and sovereign immunity is therefore not available. In Maxwell, the court found that tribal paramedics named in the suit could not assert sovereign immunity in a suit arising out of an emergency response, because the damages sought were not from the tribe itself, but from the individuals. 708 F.3d at 1080-81, 1089. In Pistor, the court cited Maxwell, and found that sovereign immunity did not apply in a suit against tribal gaming officers in their individual capacities who seized the plaintiffs after they won large amounts of money. 791 F.3d at 1108-09, 1113-14.

But, both Maxwell and Pistor involved actions in response to isolated scenarios.[4] Maxwell, 697 F.3d at 1081; Pistor, 791 at 1108-09. To that end, both courts explicitly noted that sovereign immunity did not apply because the remedy sought would not restrain the Tribe from acting, but rather merely compensate the plaintiffs for their injury. Maxwell, 697 F.3d at 1088; Pistor, 791 at 1114. At issue in Maxwell was the negligent conduct of individuals responding to a specific emergency. 708 F.3d at 1080-81. At issue in Pistor was isolated

_____

[4] Washington also cites Tenneco Oil Co. v. Sac and Fox Tribe of Indians of Oklahoma, 725 F.2d 572 (10th Cir. 1984) for further support of this argument. There, the court held that a gas company seeking to invalidate tribal ordinances could maintain a suit against named officials. Id. at 574-75. It reasoned that, when a plaintiff alleges that an officer acted outside the scope of his authority, sovereign immunity is not implicated. Id. at 574. But, like Maxwell and Pistor, Tenneco involved named officers. Id. And, the court reasoned that the presence of federal question jurisdiction was key to its holding that the suit may proceed. Id. at 575. Neither of these concerns are present in Washington's case.

conduct of individuals, constituting acts of intimidation and punishment of a group of highly successful gamblers. 791 F.3d 1108-09. Neither requested relief such that a Tribe's policies or programmatic practices should be enjoined.

But, here the crux of Washington's argument is that the tribe's ongoing practice of seizing and forfeiting nonmembers' vehicles should be enjoined. And, a plaintiff cannot circumvent tribal immunity by simply naming an officer of the Tribe as a defendant, rather than the sovereign entity. Cook v. AVI Casino Enters., Inc., 548 F.3d 718, 727 (9th Cir. 2008). This is for obvious reasons. If the opposite were true, a plaintiff challenging a sovereign's authority could simply name an officer of the sovereign to completely avoid the principles underlying sovereign immunity. See id. Washington challenges the Tribe's outright authority to forfeit vehicles of nonmembers. The lawsuit does not concern an isolated act by individuals, but rather the Tribe's ongoing authority to engage in a specific practice. Maxwell and Pistor do not apply.[5]

---

[5] At oral argument, Washington stressed that another case, Lewis v. Clarke, __ U.S. __, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017), establishes that the officers here may be sued individually. In Lewis, the court held that a tribal employee could not assert sovereign immunity in the following circumstance:

> This is a negligence action arising from a tort committed by Clarke on an interstate highway within the State of Connecticut. The suit is brought against a tribal employee operating a vehicle within the scope of his employment but on state lands, and the judgment will not operate against the Tribe. This is not a suit against Clarke in his official capacity. It is simply a suit against Clarke to recover for his personal actions, which "will not require action by the sovereign or disturb the sovereign's property."

Id. at 1292 (quoting Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949)). Lewis is distinguishable,

Washington contends that upholding the trial court will render ineffective RCW 10.92.020(2)(a)(ii)'s sovereign immunity waiver. We disagree. The waiver would retain vitality when tribal officers are enforcing Washington state law, acting in the capacity of a State peace officer.

We hold that Washington has not demonstrated that the officers were acting as State peace officers. Therefore, the waiver of sovereign immunity in RCW 10.92.020(2)(a)(ii) does not apply.[6] No other exception to sovereign immunity applies, and the Tribe and its officers are therefore immune from this suit. Joinder is not feasible.

C. Indispensable party

Washington argues that, even if the court determines that joinder is not feasible as to the tribe and its officers due to sovereign immunity, the suit should proceed against the Department.

This inquiry is heavily influenced by the facts and circumstances of the individual case. AUTO, 175 Wn.2d at 229. The court must determine whether,

---

because Washington's primary argument goes to tribal authority for an ongoing practice, not that the tribe should be liable for isolated negligence.

[6] Washington also argues that the case should nevertheless proceed, because the Tribe's RCW 10.92.020(2)(a) insurers are not protected by sovereign immunity. She cites Smith Plumbing v. Aetna Casualty, 149 Ariz. 524, 527, 720 P.2d 499 (1986), where the Arizona Supreme Court held that an insurer was not entitled to assert a Tribe's sovereign immunity. But, even if this were a correct statement of Washington law, she has not established that the tribe is not a necessary party in a proceeding to establish that its officers acted under Washington law and not tribal law.

12

in equity and good conscience, the action should proceed among the parties before it, or be dismissed. CR 19(b). The factors to be considered are:

> (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Id.

These factors weigh in favor of dismissal. First, the prejudice to the Tribe would be substantial. In effect, Washington seeks a pronouncement that tribes may not pursue asset forfeiture against nonmembers. Any such decision would have a substantial effect on tribal policy, and the health and welfare of the tribe. Washington urges the court to allow the suit to go forward against the Department alone, and enjoin the department from changing vehicle titles based on tribal forfeiture.[7] But, such a decision would still prejudice the Tribe. Although such an injunction would limit only the Department's conduct, it would

---

[7] Relatedly, Washington also claims that the Department violated its own protocol in changing the title based on a foreign (here, tribal) judgment, without first registering that judgment in superior court. She notes that, in a letter regarding another non-Tribe member's vehicle, the Department stated that its protocol is to register foreign judgments in superior court before seeking a change of title pursuant to that judgment. But, she claims the Department is not following this procedure.

Even if the sovereign immunity discussion above does not also bar this argument, Washington fails to identify the available relief that would be adequate. Her only cause of action for damages made in the complaint is against the tribal officials. And, the Director would have no authority to actually return the vehicle to her possession, because doing so would require an action against the Tribe in superior court, where the same sovereign immunity barriers would be present. Washington fails to identify the relief that this court could provide in response to this argument. It is not grounds for reversal.

13

nevertheless prevent the Tribe from obtaining or selling vehicles via forfeiture. As a result, this factor weighs in favor of dismissal.

Second, there is little opportunity to fashion relief that would limit prejudice to the Tribe. The core of Washington's claim is that the Tribe's asset forfeiture practices against nonmembers must be enjoined. The relief that Washington seeks would necessarily prejudice the Tribe.

Third, a judgment against the Department alone, at best, could enjoin it from issuing titles based on tribal court judgments against nonmembers. But, this would not guarantee that the forfeitures themselves stopped. A judgment in the absence of the Tribe would not be adequate.

Finally, Washington was not without an alternate remedy. She could have contested the original forfeiture proceeding in tribal court. She did not. That proceeding was the most logical place to challenge the Tribe's authority to seek forfeiture of her property. Instead, she now pursues a tort claim, after the fact, alleging that the Tribe had no jurisdiction to take her property in the first place, even though she did not contest the Tribe's action when she had the original opportunity to do so.

This is in stark contrast to a case like AUTO, that Washington cites in arguing that dismissal would be inequitable. There, a trade group sought to invalidate state compacts with tribes regarding fuel taxes. 172 Wn.2d at 220-21. The court found that dismissal under CR 19 was not warranted, in part because there was no alternative remedy available that could have addressed the validity

14

of the compacts. Id. at 232-33. Challenging the validity of the compacts in state court was literally the only possible way for the trade group to obtain relief. Id. at 232. The posture of Washington's claim is different. She did not challenge the forfeiture when she had the initial opportunity in tribal court.

Because the validity of the Tribe's practices are central to this case, and because an alternative remedy was available to Washington, we hold that the Tribe was an indispensable party, and the action may not proceed without it. The trial court properly dismissed this case on CR 19 grounds.

## II. Motion to Modify

Washington has filed a motion to modify a commissioner's ruling that denied remand. The original motion to remand sought remand in order to give Washington an opportunity to factually develop whether the Tribe is in compliance with the federal Indian Self Determination Act (ISDA).[8] The ISDA permits Native American tribes to contract with the Secretary of the Interior to furnish services previously administered by the federal government. Evans v. McKay, 869 F.2d 1341, 1346 (9th Cir. 1989). The ISDA further vests the Secretary with discretion to require any tribe requesting such a contract to obtain adequate liability insurance. Id. And, if a tribe enters into any such "self-determination contracts," the insurance carrier must waive its rights to use sovereign immunity as a defense, up to the policy limits. 25 U.S.C. § 5321(c)(3)(A).

---

[8] 25 U.S.C. §§ 5301-5423.

Washington did not raise this argument below. But, she brought a motion to remand so that she could engage in further fact finding that would indicate whether the ISDA waiver of sovereign immunity might apply. A commissioner of this court treated this motion as a motion to add additional evidence under RAP 9.11, and denied the relief sought on the grounds that Washington did not satisfy the RAP 9.11 requirements. Washington then filed a motion to modify the commissioner's ruling. Washington argues that the motion to modify should be granted and remand is necessary, because if the case is not remanded, an entire pool of tort victims—non-Tribe members whose assets are seized by tribes—will have no legal remedy.

Washington makes a conclusory statement that she has satisfied the RAP 9.11 elements. But, she does not establish that RAP 9.11 has in fact been satisfied. To provide additional evidence under RAP 9.11(a), a party must satisfy the following six elements;

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

Most notably, RAP 9.11(a)(3) has not been satisfied here. Washington states that her failure to raise this federal claim below is due to her attorney being "unaware" of 25 U.S.C. § 5321(c)(3)(A). Thus, it appears that Washington's new theory regarding the ISDA is a result of counsel discovering a federal statute,

after dismissal below, that might tend to support her argument against sovereign immunity.

Because Washington does not establish that all six elements of RAP 9.11 have been met, we deny the motion. And, because RAP 9.11 has not been satisfied, we need not wade into the complex substantive federal questions raised about the construction and applicability of 25 U.S.C. § 5321(c)(3)(A).

The resolution of this motion does not affect the preceding analysis on the merits of the appeal. Washington's motion to modify is denied.

### III. Attorney Fees

Washington is not entitled to relief. Her request for attorney fees is denied.

We affirm.

_Appelwick_

WE CONCUR:

_Trickey, ACJ_          _Cox, J._