CADDO NATION OF OKLAHOMA,
Plaintiff-Appellant,

v.

WICHITA AND AFFILIATED TRIBES; Terri Parton, in her official capacity as Tribal President of Wichita and Affiliated Tribes; Jesse E. Jones, in his official capacity as Vice President of the Wichita and Affiliated Tribes; Myles Stephenson, Jr., in his official capacity as Secretary of the Wichita and Affiliated Tribes; S. Robert White, Jr., in his official capacity as Treasurer of the Wichita and Affiliated Tribes; Shirley Davila, in her official capacity as Committee Member of the Wichita and Affiliated Tribes; Gladys Walker, in her official capacity as

---

Committee Member of the Wichita
and Affiliated Tribes; Karen Thomp-
son, in her official capacity as Com-
mittee Member of the Wichita and
Affiliated Tribes, Defendants-Appel-
lees.

No. 16-6161

United States Court of Appeals,
Tenth Circuit.

Filed December 18, 2017

.Mary Kathryn Nagle (Wilson Pipestem and Abi Gain with her on the briefs), Pipestem Law, P.C., Tulsa, Oklahoma for Appellant.

William R. Norman (K. Kirke Kickingbird and Michael D. McMahan with him on the brief), Hobbs, Straus, Dean & Walker, LLP, Oklahoma City, Oklahoma, for Appellees.

Before TYMKOVICH, Chief Judge, HARTZ, and HOLMES, Circuit Judges.

TYMKOVICH, Chief Judge.

The Wichita Tribe has roots in parts of Oklahoma, Kansas, and Texas. Today, its reservation is located in the northern half of Caddo County, Oklahoma. To commemorate its history, the Tribe planned a Tribal History Center on nearby land the federal government holds in trust for the Wichita Tribe and two neighboring tribes. One of those neighbors, the Caddo Nation, claims the land may contain remains of ancestral relatives.

Before the Wichita Tribe began construction, Caddo Nation sued the Wichita Tribe for allegedly violating the procedures required by the National Historic Preservation Act (NHPA) and the National Environmental Policy Act (NEPA) throughout the planning process. Caddo Nation sought an emergency temporary restraining order preventing Wichita Tribe from continuing construction until it complied with those procedures. When the district court denied that request, Caddo Nation appealed to this court without seeking further preliminary relief. In the intervening year while the case was on appeal in this court, Wichita Tribe completed construction of the History Center.

█ We conclude we have no jurisdiction over this appeal because the relief Caddo Nation requested from the district court—a temporary restraining order enjoining construction—is now moot. We thus grant Wichita Tribe's motion to dismiss this appeal.[1]

## I. Background

In 2015, Wichita and affiliated tribes made plans to build a History Center on a plot of land held by the federal government in trust for the Wichita Tribe, Delaware Nation, and Caddo Nation jointly.[2] In

---

1. Although we do not decide the question, we have serious doubts as to whether, mootness aside, we would have jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1). It is well established that absent extraordinary circumstances a litigant may not appeal a district court's denial of a temporary restraining order. *Office of Pers. Mgmt. v. Am. Fed'n of Gov't Employees, AFL-CIO*, 473 U.S. 1301, 1303, 105 S.Ct. 3467, 87 L.Ed.2d 603 (1985); *see also Carson v. American Brands, Inc.*, 450 U.S. 79, 80, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981); *United States v. McVeigh*, 157 F.3d 809, 813 (10th Cir. 1998). It does not appear the circumstances here would warrant a deviation from this rule.

2. The tribes apparently executed a partition agreement dividing up this land between the three tribes in 2007 but two of the tribes subsequently rescinded the resolution. The tribes are disputing ownership of the parcel before the Interior Board of Indian Appeals. This dispute is not relevant to the claims at issue here.

Wichita Tribe's eyes, the History Center would both preserve its history and contribute to the Tribe's development of the area into a "destination business site." App. 122.

Wichita Tribe accepted funds for this project from the Department of Housing and Urban Development (HUD). In doing so, Wichita Tribe agreed to comply with all the statutory and regulatory requirements that would constrain HUD's own actions. *See* 42 U.S.C. § 5304(g); 24 C.F.R. §§ 58.2, 58.4, 58.5. These requirements include compliance with the National Historic Preservation Act and the National Environmental Policy Act. *See* 24 C.F.R. §§ 58.4, 58.5.

The National Historic Preservation Act requires federal agencies to "take into account the effect" of any "undertaking" on "any historic property." 54 U.S.C.A. § 306108 (2014).[3] An "undertaking" includes a "project ... carried out with Federal financial assistance." 36 C.F.R. § 800.16. In taking into account a project's effect on historic property, the agency "shall consult with any Indian tribe ... that attaches religious and cultural significance" to the property. 54 U.S.C.A. § 302706(b). The Advisory Council on Historic Preservation, the body tasked with issuing regulations implementing the Act, has issued a slate of regulations regarding what such consultation requires. *See* 36 C.F.R. §§ 800.2–800.13. According to these regulations, agencies must provide a tribe with a "reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's effects on such properties, and participate

in the resolution of adverse effects." 36 C.F.R. § 800.2(c)(2)(ii).

The National Environmental Policy Act, in contrast, requires agencies to study and report on the environmental effects of "major Federal actions," *see* 42 U.S.C. § 4332 (C), which include "programs entirely or partly financed" by an agency, 40 C.F.R. § 1508.18. As part of this process, agencies must "study, develop, and describe appropriate alternatives" to the proposed action. 42 U.S.C. § 4332 (E). If an agency determines the project will not have a significant impact on the environment, it must prepare what is known as a "Finding of No Significant Impact" (FONSI) notice. 24 C.F.R. § 58.43(a). According to HUD's regulations for entities assuming HUD's Environmental Policy Act obligations, the "responsible entity" must "[a]s a minimum ... send the FONSI notice to individuals and groups known to be interested in the activities." *Id.*

On January 9, 2015, in an attempt to comply with the Historic Preservation Act's consultation requirement, the Wichita Tribe sent Caddo Nation a letter explaining its construction plans and requesting consultation. At the time, Caddo Nation's leadership was in disarray because of internal disputes then before the Federal Court of Indian Offenses for the Southern Plains.

The Caddo Nation did not respond to the letter and Wichita Tribe continued with its plans. Wichita Tribe then hired an archaeologist to assess the likelihood that the Tribe's chosen plot of land contained archaeological remains. The archaeologist concluded a section of the land might be eligible for the National Register because it was likely the site of the Riverside Indian School established in the area in 1871. Wichita Tribe instituted a 100-foot avoid-

---

**3.** In 2014, Congress moved the Act from its original home in 16 U.S.C. § 470 *et seq.* to 54 U.S.C. § 302101 *et seq. See* Pub. L. No. 113-287, 128 Stat 3094 (2014).

ance zone to protect that segment of land, labeled CD-352, from disturbance. It decided, however, not to commission any further studies.

On May 22, 2015, Wichita Tribe published a "Finding Of No Significant Impact" in the local Anadarko newspaper but did not send it to Caddo Nation. In January of the next year—a year after Wichita Tribe's first letter advising Caddo Nation of the project—Wichita Tribe sent Caddo Nation a letter explaining the archeological report and its continued construction plans.

In February 2016, Caddo Nation for the first time contacted Wichita Tribe to express concern over the location of the project. Caddo Nation leaders told Wichita Tribe that several elders believed the site contained Caddo graves. According to Caddo oral history, some children who attended the Riverside Indian School were buried near it. After this, the tribes held a series of unfruitful meetings at which Caddo Nation complained it was not properly consulted and Wichita Tribe claimed it had fulfilled its consultation obligations by sending the January 2015 letter. Wichita Tribe also contended that Caddo Nation had no basis for believing there were graves on the site. In its last proposal, Caddo Nation asked to perform ground-penetrating radar testing at its own expense to verify that Wichita Tribe's plans would not harm ancestral remains. Wichita Tribe refused, arguing it was too late to change its plans and that Caddo Nation missed its chance to consult.

Without any resolution of these issues, Caddo Nation filed suit alleging that Wichita Tribe (1) failed to properly consult with Caddo Nation as the Historic Preservation Act requires, (2) did not properly consider alternatives to its project as the Environmental Policy Act requires, and (3) did not send notice of the "Finding Of No Significant Impact" directly to Caddo Nation as HUD's regulations require.[4] Caddo Nation requested various forms of relief, including a declaratory judgment that Wichita Tribe had failed to comply with the Historic Preservation Act and the Environmental Policy Act, permanent injunctive relief, and "such other and further relief as the Court deems just." App. 37. Caddo Nation also requested an emergency temporary restraining order and a preliminary injunction preventing Wichita Tribe from continuing construction, claiming that once Wichita Tribe poured concrete, Caddo Nation would be unable to conduct radar testing at the site.

The district court held a hearing on the emergency motion for a temporary restraining order on May 26, 2016 and granted a temporary restraining order until June 1. The next day, the tribes filed a joint statement as to the status of construction. On May 31, the court vacated the order because it thought Caddo Nation had not shown it was likely to succeed on the merits of its claims. The court noted that (1) its decision was "[b]ased on the record before it," *Caddo Nation of Oklahoma v. Wichita & Affiliated Tribes*, No. CIV-16-0559-HE, 2016 WL 3080971, at *10 (W.D. Okla. May 31, 2016), (2) it "[did] not have a copy of the [archaeological] report or copies of other documents that might be helpful at least in providing some background information," *id.* at *3 n.7, and (3) it "[did] not have the benefit of any briefing from defendants," *id.*

A week later, on June 7, Caddo Nation filed this appeal from the district court's denial of the temporary restraining order. It also moved for an injunction pending appeal from this court. We denied that motion because Caddo Nation had not re-

---

4. Caddo Nation brought its NEPA claims under the APA.

quested such relief from the district court as Federal Rule of Appellate Procedure 8(a)(1) requires. For the remainder of the time this case was on appeal, Caddo Nation did not move for such an injunction in the district court, though it could have done so under Federal Rule of Civil Procedure 62(c). 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2904 (3d ed. 2017) ("Rule 62(c) authorizes the trial court to suspend, modify, restore, or grant an injunction during the pendency of an appeal in injunction cases."). Wichita Tribe's construction therefore went forward unhindered.

Over a year has passed since Caddo Nation filed this appeal[5] and the History Center is now complete.[6] Wichita Tribe has consequently moved to dismiss this appeal as moot.

## II. Analysis

■ "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case, rather than issue an advisory opinion." *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015) (quoting *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765,

768 (8th Cir.2014)) (alterations incorporated).

■ "[E]ven where it is too late to ... provide a fully satisfactory remedy," however, "the availability of a partial remedy will prevent the case from being moot." *Utah Envtl. Cong. v. Russell*, 518 F.3d 817, 824 (10th Cir. 2008). *See Church of Scientology v. United States*, 506 U.S. 9, 13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (the availability of "partial relief" meant the case was not moot even though it was too late to provide a "fully satisfactory remedy" for the original harm). But though a *case* may not be moot because partial relief is still possible, a *specific request* for an injunction may become moot. *Fleming*, 785 F.3d at 446. *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257 (10th Cir. 2004) (plaintiff's request for a temporary restraining order was moot because the relief sought could no longer be granted, but the case as a whole remained alive because the plaintiff sought nominal damages); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (explaining that "the issue of preliminary injunctive relief" can become moot even though "the case as a whole remains alive because other issues have not become moot").

■ These principles apply with equal force to claims regarding NEPA and the NHPA. "Ordinarily, a NEPA claim no longer presents a live controversy when the proposed action has been completed and when no effective relief is available."

---

**5.** For seven months during that time span, the tribes were engaged in mediation which ultimately proved unsuccessful.

**6.** Caddo Nation has moved to supplement the record with an affidavit stating that because Wichita Tribe is planning to dig a trench for the installation of fiber optic cables, construc-

tion is not complete. Wichita Tribe contests this allegation with an affidavit stating the fiber optic cable installation Caddo Nation references is part of a regional upgrade unrelated to construction of the History Center. We deny the motion.

*Airport Neighbors All., Inc. v. United States*, 90 F.3d 426, 428 (10th Cir. 1996).

■ In its motion to dismiss this appeal as moot, Wichita Tribe argues its finished construction renders the entire case moot. Caddo Nation contends that even if it can no longer seek an injunction on construction, it can still seek to enjoin the History Center's use to the extent it might disturb any ancestral remains in the area.

But even if Caddo Nation might be able to seek relief regarding the future operation and use of the History Center or the rest of the site, it never asked the district court for such relief. Caddo Nation only asked for a temporary restraining order and preliminary injunction enjoining *construction* of the History Center. In particular, Caddo Nation's emergency motion for a temporary restraining order only sought to "enjoin[ ] . . . Wichita Tribe elected officials from constructing a new building (the 'History Center') on lands that are jointly held in trust. . . ." App. 40. The thrust of its claim was that the pouring of concrete for the History Center would prevent it from determining whether "Caddo burials and/or sacred objects [would] be disturbed as a result of Defendants' construction" on the trust lands. *Id.*[7]

In spite of this, Caddo Nation suggests this court sua sponte on appeal should expand the request for injunctive relief and fashion a remedy that allows Caddo Nation "to test the History Center lands for Caddo gravesites, remains, and cultural patrimony." Aplt. Resp. to Mot. Dismiss at 4. We decline to do so. *See Fazzini v. Thompson*, 108 F.3d 1388, 1388 (10th Cir. 1997) (unpublished) (refusing to address claims not before the district court in an appeal of a temporary restraining order).

Caddo Nation did not request this relief in its motion for a temporary restraining order, nor did it do so in a motion for a stay on appeal. And Caddo Nation never asked the district court to rule on a preliminary or permanent injunction, even in the approximately 18 months this case has been on appeal. *See Thomas v. Bd. of Ed., Granville Cent. Sch. Dist.*, 607 F.2d 1043, 1047 (2d Cir. 1979) ("Although filing of a timely notice of appeal in the district court normally divests that court of further jurisdiction, an appeal from an interlocutory order granting or denying preliminary injunctive relief does not strip the district court of jurisdiction to proceed with the action on the merits." (citing *Ex parte National Enameling & Stamping Co.*, 201 U.S. 156, 162, 26 S.Ct. 404, 50 L.Ed. 707 (1906))); *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) (same).

We thus constrain our analysis to the relief Caddo Nation sought below: a temporary restraining order on construction of the History Center.

■ That relief is now impossible. An appeal of a denial of a "temporary restraining order" that cannot have "any present-day effect" is moot. *Utah Animal Rights Coal.*, 371 F.3d at 1257. Consequently, because "[w]e cannot turn back the clock" to a time when the relief at issue in this appeal was still possible, this appeal is moot. *Fleming*, 785 F.3d at 445. *See Fazzini*, 108 F.3d at 1388 (noting that "appeal from the order denying [a] motion for a temporary restraining order [was] moot because" the activity it "sought to enjoin" had already happened (citing *Thournir v. Buchanan*, 710 F.2d 1461, 1463 (10th Cir.1983))).

---

7. It is worth noting, the district court indicated in its order that it lacked additional supporting materials that might have been help-ful in evaluating the request for injunctive relief.

That is not to say Caddo Nation does not have new claims for relief it can seek in district court regarding the operation of the Center or other activities on the site. We only decline to visit these arguments, asserted for the first time before this court, in an appeal for relief that is now moot.

### III.  Conclusion

We therefore **GRANT** Wichita Tribe's motion to dismiss this appeal, **DISMISS** the appeal, and **REMAND** to the district court for further proceedings. Caddo Nation may seek to amend its complaint or file a new motion for a preliminary injunction on the History Center's use pending the outcome of its Environmental Policy Act and Historic Preservation Act claims.