**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 4, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CADDO NATION OF OKLAHOMA,

    Plaintiff - Appellant,

v.

WICHITA AND AFFILIATED TRIBES;
TERRI PARTON, in her official capacity as
Tribal President of Wichita and Affiliated
Tribes; JESSE E. JONES, in his official
capacity as Vice President of the Wichita and
Affiliated Tribes; MYLES STEPHENSON,
JR., in his official capacity as Secretary of the
Wichita and Affiliated Tribes; SHIRLEY
DAVILA, in her official capacity as
Committee Member of the Wichita and
Affiliated Tribes; VANESSA VANCE, in her
official capacity as Treasurer of the Wichita
and Affiliated Tribes; NAHUSEAH
MANDUJANO, in her official capacity as
Committee Member of the Wichita and
Affiliated Tribes; MATT ROBERSON, in his
official capacity as Committee Member of the
Wichita and Affiliated Tribes,

    Defendants - Appellees.

No. 18-6142

(D.C. No. 5:16-CV-00559-HE)

W.D. Okla.

---

**ORDER AND JUDGMENT**[*]

---

    [*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Before **MATHESON**, **MURPHY**, and **EID**, Circuit Judges.

_____

## I. INTRODUCTION

Caddo Nation of Oklahoma ("Caddo Nation") brought suit against Wichita and Affiliated Tribes ("Wichita Tribe"), asserting Wichita Tribe violated the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA") during the process of planning to build a Tribal History Center funded by the Department of Housing and Urban Development ("HUD"). *See Caddo Nation of Okla. v. Wichita & Affiliated Tribes*, 877 F.3d 1171, 1173-74 (10th Cir. 2017).[1] Caddo Nation appealed to this court after the district court denied a temporary restraining order preventing continuing construction of the History Center. *Id.* at 1175. This court held it lacked jurisdiction because construction of the History Center was completed during the pendency of the appeal. *Id.* at 1177-78. "[T]he relief Caddo Nation requested from the district court—a temporary restraining order enjoining construction—[was] now moot." *Id.* at 1172. We recognized, however, the *possibility* Caddo Nation might have viable NEPA and NHPA claims "regarding the operation of the Center or other activities on the site." *Id.* at 1178. Thus, we remanded for further

_____

[1]The factual, legal, and procedural background of the dispute between Caddo Nation and Wichita Tribe over the History Center project is set out at length in this court's prior opinion. *Caddo Nation of Okla. v. Wichita & Affiliated Tribes*, 877 F.3d 1171, 1173-76 (10th Cir. 2017). Thus, for the most part, it is not necessary to restate the background in resolving the instant appeal.

proceedings and specifically noted "Caddo Nation may seek to amend its complaint or file a new motion for a preliminary injunction on the History Center's use pending the outcome of its [NEPA] and [NHPA] claims." *Id.*

Caddo Nation filed an amended complaint. Wichita Tribe responded by filing a motion to dismiss. Wichita Tribe argued all claims set out in the amended complaint were barred by tribal sovereign immunity and, in any event, Caddo Nation's NEPA and NHPA claims were mooted by the completion of the History Center. The district court concluded all claims set out in the amended complaint, with the exception of the NEPA and NHPA claims, were barred by tribal sovereign immunity.[2] As to the NEPA and NHPA claims, the district court concluded Wichita Tribe agreed to comply with those statutory provisions, and thereby waived its sovereign immunity, when it accepted money from HUD for the History Center project. *See* 42 U.S.C. § 5304(g); 24 C.F.R. §§ 58.2, 58.4, 58.5; *see also Caddo Nation*, 877 F.3d at 1174 (noting that by accepting HUD funds, Wichita Tribes agreed to comply with NEPA and NHPA). Nevertheless,

---

[2]Caddo Nation has not challenged the district court's ruling in this regard. Accordingly, the only claims from the amended complaint at issue on appeal are Caddo Nation's NEPA and NHPA claims. This court has made clear that the dispute between Caddo Nation, Wichita Tribe, and Delaware Nation over ownership and/or control of the parcel upon which the History Center was built is not relevant to Caddo Nation's NEPA and NHPA claims. *Caddo Nation*, 877 F.3d at 1173 n.2. Accordingly, Caddo Nation's Motion to Take Judicial Notice and File Supplemental Appendix, which relates solely to that question, is **DENIED**.

the district court ruled that Caddo Nation's NEPA and NHPA claims were mooted by the completion of the History Center.

On appeal, Caddo Nation asserts the district court erred in concluding its NEPA and NHPA claims are moot. Wichita Tribe contests that assertion and, as an alternate basis for affirming the district court's order of dismissal, contends the claims are barred by tribal sovereign immunity. The district court correctly ruled that Caddo Nation's NEPA and NHPA claims are not barred by sovereign immunity.[3] The district court was also correct in concluding that most aspects of

---

[3]Wichita Tribe raises various other matters in its response brief in an effort to offer alternative rationales for affirming the district court's dismissal of the amended complaint. None of these matters is worthy of an extended analysis. The assertion Caddo Nation's NEPA and NHPA claims are not properly brought under the Administrative Procedure Act ("APA") clearly lacks merit. "[A] plaintiff seeking judicial review pursuant to the APA must (i) identify some final agency action and (ii) demonstrate that its claims fall within the zone of interests protected by the statute forming the basis of its claims." *Catron Cty. Bd. of Comm'rs v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1434 (10th Cir. 1996) (quotation omitted). Wichita Tribe has never contested that the Finding of No Significant Impact ("FONSI") in its Environmental Assessment ("EA") satisfies the requirement of final agency action. Furthermore, given that the instant dispute centers around the possibility the construction site is a burial ground for members of the Caddo Nation, *Caddo Nation*, 877 F.3d at 1175, the claims "fall within the zone of interests protected by" NHPA and NEPA. In any event, this court has already recognized that, at the very least, Caddo Nation's NEPA claim was brought under the APA. *Id.* at 1175 n.4. To the extent Wichita Tribe is asserting Caddo Nation did not exhaust its administrative remedies, such an argument is not adequately briefed. Wichita Tribe vaguely asserts Caddo Nation "could have filed timely administrative appeals of the Wichita Tribe's and HUD's decisions regarding the Project." Appellees' Br. at 39. As the Supreme Court has made clear, however, administrative exhaustion is entirely dependent on statutory and regulatory requirements. *Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993).

(continued...)

Caddo Nation's NEPA and NHPA claims are moot. Those claims are moot as they relate to the 4000 square foot museum, the traditional grass house, and the grass arbor. There is no indication in the record, however, that the ceremonial dance grounds, a portion of the History Center project specifically included in Wichita Tribe's EA, has been completed. Thus, on the current record, Caddo Nation's NEPA and NHPA claims are not moot as to that narrow aspect of the History Center project. Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms in part**, **reverses in part**, and **remands** to the district court for further proceeding consistent with this opinion.

## II. ANALYSIS

Because a ruling in its favor on the matter would fully resolve the appeal, this court first takes up Wichita Tribe's assertion that Caddo Nation's APA-based NEPA and NHPA claims are barred by tribal sovereign immunity. *See Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007) (holding that tribal sovereign immunity implicates subject matter jurisdiction).

---

[3](...continued)
Absent any indication of what actions Caddo Nation failed to undertake that are required by statute or regulation, there is nothing to indicate Caddo Nation's NEPA and NHPA claims are unexhausted. *See id.* Finally, the remaining matters set out in Wichita Tribe's appellate brief can only reasonably be construed as relevant if this court should conclude the amended complaint does not state APA-based NEPA and NHPA claims. Having concluded the amended complaint does state such claims, and also having noted that such claims are the only ones that remain pending on appeal, *see supra* n.2, the remaining contentions are irrelevant.

The district court correctly rejected this proposition. The History Center project was funded using a HUD grant. As part of the process of granting such funding, HUD can "delegate any of [its] functions, powers, and duties . . . as [it] may deem desirable." 42 U.S.C. § 3535(d). "[I]n lieu of the environmental protection procedures otherwise applicable, [HUD] may under regulations provide for the release of funds for particular projects to recipients of assistance . . . who assume all of the responsibilities for environmental review, decisionmaking, and action pursuant to [NEPA], and such other provisions of law as the regulations" may specify. 42 U.S.C. § 5304(g)(1). The relevant regulations require that a grantee like Wichita Tribe comply with both NEPA and NHPA. 24 C.F.R. §§ 58.1, 58.4, 58.5, 1003.605. Consistent with this scheme, HUD delegated its obligations under NEPA and NHPA to Wichita Tribe and Wichita Tribe certified compliance with both.[4]

---

[4]Indeed, the EA certifies as follows:

The [Wichita Tribe] certifies to HUD that Terri Parton, in her capacity as President consents to accept the jurisdiction of the Federal Courts if an action is brought to enforce responsibilities in relation to the environmental review process and that these responsibilities have been satisfied. HUD approval of the certification satisfies its responsibilities under NEPA and related laws and authorities and allows [Wichita Tribe] to use program funds.

See 42 U.S.C. §§ 5304(g)(3)(D), 5306(a) (providing together that when a grantee tribe assumes the pertinent regulatory responsibilities, it must "specify that the
(continued...)

The APA generally waives the Federal Government's immunity from a suit "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. By specifically accepting and assuming HUD's rights, duties, and obligations to act in conformity with NEPA and NHPA, Wichita Tribe waived its sovereign immunity for just the type of APA-based suit

---

[4](...continued)
certifying officer (i) consents to assume the status of a responsible Federal official under [NEPA or NHPA] . . . and (ii) is authorized and consents on behalf of the recipient of assistance . . . to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such an official"). Wichita Tribe asserts, as a general matter, it is only the Executive Committee, not the President, that can waive Wichita Tribe's sovereign immunity. Appellees' Br. at 41-42. It specifically recognizes, however, that the waiver in the EA is effective, even though only signed by the President, to the same extent as a waiver by the federal government. *Id.* at 42 ("As with the federal government, however, [the waiver of sovereign immunity in the EA] would be effective—if at all—only if Caddo had complied with the requirements of the APA. Because Caddo failed to comply with the APA, the argument is meritless."). As noted above, however, Caddo Nation brought properly exhausted APA claims in its amended complaint, *supra* n.3, and those APA claims are the only ones that remain alive in this case, *supra* n.2. Thus, by its own admission, Wichita Tribe's argument as to sovereign immunity fails. In any event, the record before this court does not support the assertion that only the Executive Committee has the power to waive sovereign immunity. The Wichita Governing Resolution reserves to the Executive Committee the "power . . . to transact business and otherwise speak or act on behalf of the Tribes," but later grants to the President the power of "general supervision . . . of the Executive Committee" and state the President "shall perform all duties appertaining to the office." Based on this language, we conclude the document does not preclude the President from waiving sovereign immunity in the manner set out in the EA. *Cf. Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1287 (11th Cir. 2001) (holding no waiver by officer when tribal charter reserved sovereign immunity waiver "pursuant to a resolution duly enacted by the Tribal Council").

at issue in this case. In arguing for a contrary result, Wichita Tribe does not cite to any relevant precedent. Instead, it merely identifies cases indicating a wavier of tribal sovereign immunity must be clear and unequivocal. *See, e.g.*, *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). The statutory and regulatory scheme set out above, however, could not be more clear: HUD can condition the provision of a grant to an Indian tribe on the tribe's acceptance of HUD's obligation to comply with NEPA and NHPA, an obligation enforceable via the APA. 5 U.S.C. § 702; 42 U.S.C. §§ 5304(g), 5306(a). Because HUD did so condition the grant to Wichita Tribe, and because Wichita Tribe affirmatively waived its sovereign immunity in the certification included in the EA, this court has subject matter jurisdiction over Caddo Nation's APA-based NEPA and NHPA claims against Wichita Nation.

The district court concluded the case was moot because Wichita Tribe had completed construction of the History Center. This conclusion is only partially correct. The EA describes the project as constituting four parts: a 4000 square foot building, a grass house, a grass arbor, and a ceremonial dance ground. The record definitively demonstrates that the building, grass house, and grass arbor are complete.[5] In its brief on appeal, Wichita Tribe asserts the "dance ground

---

[5]In resolving this appeal, this court has taken judicial notice of the record and all filings in appeal number 16-6161, the appeal that resulted in *Caddo Nation*, 877 F.3d at 1171. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568

(continued...)

aspect was abandoned after the FONSI was published." Appellees' Br. at 25-26 n.15. There is nothing in the record, however, to confirm this assertion. Absent such evidence, this court cannot affirm the dismissal of the NEPA and NHPA claims on the basis that construction of the History Center project has been completed.

Caddo Nation asserts that even those aspects of the History Center project that are complete present a live controversy. This argument is unconvincing. It is certainly true that the mere completion of portions of the History Center project does not necessary render Caddo Nation's APA-based NEPA and NHPA claims moot. It is for that very reason *Caddo Nation* remanded the matter to allow for the filing of an amended complaint focused on "the operation of the Center or other activities on the site." 877 F.3d at 1178. The problem, however, is that Caddo Nation has not identified any aspect of the operation of the completed portions of the History Center project that implicates the interests advanced in NEPA and NHPA.

Caddo Nation relies on *Airport Neighbors Alliance, Inc. v. United States*, 90 F.3d 426 (10th Cir. 1996), to support its contention this court could still award relief. This reliance is misplaced. *Airport Neighbors* is a NEPA case in which

---

[5](...continued)
(10th Cir. 2000) ("We note . . . that the court is permitted to take judicial notice of its own files and records . . . ."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

this court found relief might be available to address environmental issues caused by use of a new airport runway. *Id.* at 428-29. Caddo Nation did not identify in its amended complaint any environmental issues relating to the operation of the History Center. *Airport Neighbors* makes clear that claims related to construction are moot once construction is complete:

> [A]lthough the fact that the upgrade of Runway 3–21 has been completed renders moot any claim relating to the *construction* of the runway, we still may consider whether Respondents complied with NEPA by adequately addressing the environmental impacts resulting from the enhanced *use* of the runway.

*Id.* at 429. In its amended complaint, Caddo Nation sought a declaration that Wichita Tribe violated NEPA and its implementing regulations and NHPA, yet alleged no environmental (or other) concerns that would result from continued operations at the History Center. That being the case, Caddo Nation's APA-based NEPA and NHPA claims are moot to the extent construction is complete. *Caddo Nation*, 877 F.3d at 1176-77 ("'Ordinarily, a NEPA claim no longer presents a live controversy when the proposed action has been completed and when no effective relief is available.'" (quoting *Airport Neighbors*, 90 F.3d at 428)).[6]

---

[6]To the extent Caddo Nation asserts this court can grant it a sufficient remedy by directing the parties to discuss demolishing those portions of the History Center project that have been completed, this court concurs with the district court:

> such a suggestion does not constitute a "remedy" or "other relief" within the meaning of the mootness inquiry. If directing the parties
>
> (continued...)

-10-

Because Caddo Nation has not sought to enjoin operations at the History Center or any other specific, tangible activity, there is no live case or controversy as to those portions of the History Center project that are complete.[7]

## III. CONCLUSION

For those reasons set out above, all aspects of Caddo Nation's APA-based NEPA and NHPA claims are moot, with the singular exception of the aspect of the claims relating to the ceremonial dance grounds. Accordingly, the district court is **AFFIRMED IN PART**, **REVERSED IN PART**, and this matter is **REMANDED** to the district court for further proceeding consistent with this

---

[6](...continued)
to a controversy to "discuss it" is "other relief," then no dispute would ever be moot because a court would always have that option available. That is plainly inconsistent with the existence and nature of the mootness doctrine.

District Ct. Order of July 9, 2018, at 6-7. Instead, as *Caddo Nation* and *Airport Neighbors* make clear, NEPA and NHPA claims directed to the construction aspects of a project are moot when the project is completed.

[7]This court rejects Caddo Nation's assertion that its NEPA and NHPA claims are not moot because it has adduced credible evidence Wichita Tribe plans to engage in further development in areas adjacent to the History Center. First, Caddo Nation has never identified any final agency action other than the FONSI set out in the EA. As noted above, the EA is specifically limited to the History Center project. Second, Wichita Tribe's obligation to comply with NEPA and NHPA, and its concomitant waiver of sovereign immunity, is directly tied to its receipt of a HUD grant to build the History Center. Caddo Nation has not identified any basis to conclude any such contemplated development falls within the ambit of the instant APA-based claims.

-11-

opinion. Given that this court has resolved this appeal after full briefing and oral argument, Wichita Nation's Motion for Summary Disposition is **DENIED** as moot.

Entered for the Court

Michael R. Murphy
Circuit Judge